OCT 28 2026 AM9:58
FILED - USDC - FLMD - ORL

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FRANK L. AMODEO,**

Appellant,

v.

Case No. 6:26-cv-02089-AGM

**LARA ROESKE FERNANDEZ,** Chapter 11 Trustee,

Appellee.
_______________________________________/

On appeal from the United States Bankruptcy Court
for the Middle District of Florida, Orlando Division
*In re Homemakers Real Estate, LLC*, Case No. 6:25-bk-05570-GER

# APPELLANT'S INITIAL BRIEF

Frank L. Amodeo, *pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32809@gmail.com

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............ vi
JURISDICTIONAL STATEMENT ............ 1
STATEMENT OF THE ISSUES ............ 7
STANDARD OF REVIEW ............ 8
STATEMENT OF THE CASE ............ 9
SUMMARY OF THE ARGUMENT ............ 13
ARGUMENT ............ 14

I. When a party challenges, the court recognizes, or a stranger identifies a concern with subject-matter jurisdiction, a federal court must decide that concern before it reaches the merits. ............ 14

II. The duty to examine jurisdiction frees the court from the constraints of summary judgment and judgment on the pleadings, permits it to examine any evidence, and requires evidentiary proceedings when needed, even where the jurisdictional facts are intertwined with the merits. ............ 17

III. The bankruptcy court recharacterized my jurisdictional challenge as a claims objection and assumed hypothetical jurisdiction over the claims. ............ 20

IV. The record before the bankruptcy court held unrefuted evidence that the PEDixon and ZPD claims rest on extensions of credit made in violation of section 687.071 ............ 23

V. Section 687.071(7) does not merely render these debts unenforceable; it removes an entire class of claims from the authority of every court of the State. 25

VI. That limit reaches the bankruptcy court's power to adjudicate, because Congress defines a claim by the law that creates it. ............ 27

VII. Once a federal court discovers that a cause lies outside its jurisdiction, it must cease all activity other than dismissal. ............ 29

CONCLUSION ............ 30

# TABLE OF AUTHORITIES

## Cases

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ........ 16

*Baker v. City of Atlanta*, 164 F.4th 850 (11th Cir. 2026) ........ 17

*Bay United Holdings, LLC v. INXS 7, LLC (In re Aegis Asset Mgmt., LLC)*, No. 25-10331, 2026 WL 2131679 (11th Cir. July 24, 2026) ........ 28

*Beausejour Corp., N.V. v. Offshore Dev. Co.*, 802 F.2d 1319 (11th Cir. 1986) ........ 25

*Bennett v. Jefferson Cnty.*, 899 F.3d 1240 (11th Cir. 2018) ........ 6

*Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015) ........ 2, 3

*Butner v. United States*, 440 U.S. 48 (1979) ........ 28, 29

*Catlin v. United States*, 324 U.S. 229 (1945) ........ 3, 5, 6, 7

*In re Charter Co.*, 778 F.2d 617 (11th Cir. 1985) ........ 3

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) ........ 5

*Fleming v. United States*, 127 F.4th 837 (11th Cir. 2025) ........ 5, 6

*Gibbs v. Buck*, 307 U.S. 66 (1939) ........ 18

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689 (11th Cir. 2005) ........ 8

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) ........ 16

*Jersey Palm-Gross, Inc. v. Paper*, 658 So. 2d 531 (Fla. 1995) ........ 25

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ........ 14, 19

*Land v. Dollar*, 330 U.S. 731 (1947) ........ 16, 18, 19

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) ........ 26

*Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990) ........ 18

*Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379 (1884) ........ 15

*Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1869) ........ 15, 29

*McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251 (11th Cir. 2004) ........ 3, 4, 9

*McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178 (1936) ........ 17, 19, 24, 29

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) ........ 5, 6

*Musselman v. Stanonik (In re Seminole Walls & Ceilings Corp.)*, 388 B.R. 386 (M.D. Fla. 2008) .......... 3
*In re Omni Capital Grp., Ltd.*, 157 B.R. 712 (Bankr. S.D. Fla. 1993) .......... 25, 26, 27
*Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80 (1992) .......... 26
*Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35 (2020) .......... 2, 3, 6
*Rollins v. Odom*, 519 So. 2d 652 (Fla. 1st DCA 1988) .......... 25
*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) .......... 15, 16, 26
*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) .......... 16, 26
*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .......... *passim*
*Stern v. Marshall*, 564 U.S. 462 (2011) .......... 6, 21
*Valliappan v. Cruz*, 917 So. 2d 257 (Fla. 4th DCA 2005) .......... 27
*Wetmore v. Rymer*, 169 U.S. 115 (1898) .......... 17, 19
*Will v. Hallock*, 546 U.S. 345 (2006) .......... 5
*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) .......... 18

**Statutes**

11 U.S.C. § 101(5)(A) .......... 8, 9, 28
11 U.S.C. § 502(b) .......... 28, 29, 31
11 U.S.C. § 502(h) .......... 12
28 U.S.C. § 1292(b) .......... 3, 9
28 U.S.C. § 1334 .......... 1
28 U.S.C. § 157 .......... 1, 20
28 U.S.C. § 158(a)(1) .......... 1, 8, 9, 30
28 U.S.C. § 158(a)(3) .......... *passim*
Act of Mar. 3, 1875, ch. 137, § 5, 18 Stat. 470 .......... 29
Fla. Stat. § 687.03(3) .......... 24
Fla. Stat. § 687.04 .......... 26
Fla. Stat. § 687.071 .......... *passim*

**Rules**

Fed. R. Bankr. P. 8002(a)(1) .......... 1
Fed. R. Civ. P. 12(b)(6) .......... 18
Fed. R. Civ. P. 56 .......... 11, 18, 22





## STATEMENT REGARDING ORAL ARGUMENT

I request oral argument. Fed. R. Bankr. P. 8019(a). None of the grounds for deciding an appeal without argument applies. Fed. R. Bankr. P. 8019(b).

The appeal is not frivolous. The bankruptcy court itself framed the question this appeal presents: "Who gets to determine this, then?" (Bankr. Doc. 351 at 29). It did not answer it.

The dispositive issues have not been authoritatively decided. No Eleventh Circuit decision addresses whether section 687.071(7), Florida Statutes, limits a court's power to adjudicate a claim, rather than the claim's enforceability.

Argument would aid the decisional process. This court must first decide its own jurisdiction under 28 U.S.C. § 158(a) on three alternative grounds. It must then decide how a state statute that withdraws a class of debts from "the courts of this state" bears on a federal court's power over claims to those debts. The questions interlock, and the court may have questions the briefs do not anticipate. I request twenty minutes per side.

## JURISDICTIONAL STATEMENT

The bankruptcy court asserted jurisdiction over the Chapter 11 case of Homemakers Real Estate, LLC under 28 U.S.C. §§ 1334 and 157. Whether that court had power to adjudicate the claims of PEDixon, LLC and ZPD, LLC is a question this appeal presents. I state the asserted basis and reserve that question. (Bankr. Doc. 344 at 2).

The order on appeal, entered August 21, 2026, denied my motions to determine the bankruptcy court's subject-matter jurisdiction over the PEDixon and ZPD claims and to exclude those parties from participating as creditors until it did. (Bankr. Docs. 242, 306, 330, 344). I filed a notice of appeal on August 26, 2026 (Bankr. Doc. 352), within the fourteen days allowed by Fed. R. Bankr. P. 8002(a)(1), and an amended motion for leave to appeal on August 31, 2026. (Doc. 1-3).

This court has jurisdiction under 28 U.S.C. § 158(a) on three independent grounds. The order is final and appealable as of right under § 158(a)(1). If it is not, this court should grant leave under § 158(a)(3). And if the order is neither, it is reviewable under the collateral-order doctrine.

### A. The order is final as to subject-matter jurisdiction.

Section 158(a)(1) reaches "final judgments, orders, and decrees." Finality in bankruptcy is not measured as it is in ordinary civil litigation. Orders in bankruptcy

cases "qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)). The unit of finality is the discrete proceeding, not the case. In *Ritzen*, an order denying relief from the automatic stay was final even though the creditor's claim was then litigated in the bankruptcy court's claims process. *Id.* at 38. The stay motion decided a threshold question, where the claim would be adjudicated, and that question was its own proceeding.

My motions have the same structure. They asked one threshold question: whether the bankruptcy court has power to adjudicate the PEDixon and ZPD claims at all and, until it decides, whether those parties may act as creditors. The bankruptcy court took up that question by itself. It recognized that it "must determine whether it has subject matter jurisdiction," heard argument on that question alone, and ruled: "I find I do have jurisdiction." (Bankr. Doc. 344 at 2; Bankr. Doc. 351 at 35). Nothing about the question of power remains to be decided. What remains, the Trustee's pending objections to the claims (Bankr. Docs. 419, 420), is the merits, which the court has now assumed power to reach.

Appellees will say Doc. 344 is only a step in claims allowance. It is not. Power to adjudicate is not a step toward the merits; it is the precondition to every step. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Under *Ritzen*,

an order that finally resolves a threshold question of where, or whether, a claim may be adjudicated is final though the claim itself remains open. I acknowledge the general rule that denial of a motion to dismiss, even on jurisdictional grounds, is not final. *Catlin v. United States*, 324 U.S. 229, 236 (1945). But *Catlin* arose in ordinary civil litigation, where the whole case is the unit of finality. *Bullard* and *Ritzen* supply the rule for bankruptcy.

**B. Alternatively, this court should grant leave under § 158(a)(3).**

Section 158(a)(3) supplies no standard for leave, so courts in this circuit apply 28 U.S.C. § 1292(b). *In re Charter Co.*, 778 F.2d 617, 620 n.5 (11th Cir. 1985); *Musselman v. Stanonik (In re Seminole Walls & Ceilings Corp.)*, 388 B.R. 386, 390–91 (M.D. Fla. 2008). The order must involve "a controlling question of law as to which there is substantial ground for difference of opinion," and an immediate appeal must be able to "materially advance the ultimate termination of the litigation." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1257–59 (11th Cir. 2004) (quoting 28 U.S.C. § 1292(b)). Each element is met.

*Controlling question of law.* The questions are pure questions of law: whether a bankruptcy court may deny a challenge to its power over a claim by relabeling the challenge an objection, and whether section 687.071(7), Florida Statutes, leaves any claim for a court to allow. The bankruptcy court made no

finding of fact on either. (Bankr. Doc. 344 at 2). Whether a court may act at all controls everything that follows.

*Substantial ground for difference of opinion.* The bankruptcy court agreed that these extensions of credit "might support disallowance," and then declined to decide the question. (*Id.*). At the hearing it framed the problem itself: "[S]ince the Florida legislature said no court can enforce a usurious debt; so, therefore, no court would have jurisdiction over it. So there can be no determination. Who gets to determine this, then?" (Bankr. Doc. 351 at 29). No Eleventh Circuit decision answers whether section 687.071(7) limits a court's power to adjudicate a claim, rather than the claim's enforceability. When the court under review poses the question and leaves it unanswered, the ground for difference of opinion is substantial.

*Material advancement.* An immediate answer "would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259. Deciding now whether PEDixon and ZPD hold claims decides who may vote, who may settle, and who may share in distributions from this estate. If the bankruptcy court lacks power over these claims, every further step it takes on them is wasted.

### C. Alternatively, the order is reviewable under the collateral-order doctrine.

The doctrine reaches "only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quotation omitted); *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The order is conclusive: the court ruled that it has jurisdiction. It is separate from the merits: the court drew that line itself, holding that usury "goes to the merits of the Claims and not to the Court's subject-matter jurisdiction." (Bankr. Doc. 344 at 2).

I acknowledge the contrary authority. "[D]enial of a motion to dismiss, even when the motion is based upon jurisdictional grounds, is not immediately reviewable." *Catlin*, 324 U.S. at 236. The Supreme Court applies the collateral-order doctrine by category, not case by case, and keeps it narrow. *Mohawk*, 558 U.S. at 107; *Will v. Hallock*, 546 U.S. 345, 349–50 (2006). And the Eleventh Circuit has declined to extend it to a new category. *Fleming v. United States*, 127 F.4th 837, 850 (11th Cir. 2025) (holding that decisions recognizing *Bivens* causes of action fall outside the collateral-order doctrine).

I ask this court to recognize a narrow category: a bankruptcy court's determination that it has power to adjudicate a claim against the estate. *Catlin* marks its own boundary. In the next sentence, the Court explained that its rule

holds "whenever the question may be saved for disposition upon review of final judgment disposing of all issues involved in the litigation or in some other adequate manner." *Id.* In bankruptcy, that reason fails for three reasons.

First, a bankruptcy case does not end in one final judgment that gathers every earlier ruling for review. It proceeds through discrete disputes resolved one after another, and later steps rest on earlier ones. *Ritzen*, 589 U.S. at 37–39. Waiting "could require the bankruptcy court to unravel later adjudications rendered in reliance on an earlier decision." *Id.* at 39.

Second, delay invites the argument that review is no longer possible. Reviewing courts may "reject bankruptcy appeals if rulings have gone into effect and would be extremely burdensome, especially to non-parties, to undo." *Bennett v. Jefferson Cnty.*, 899 F.3d 1240, 1247 (11th Cir. 2018). That risk is already concrete. While the question of power has gone undecided, PEDixon and ZPD have obtained approval of a compromise that secured releases in their favor, joined a court-ordered settlement conference on "all issues," and opposed my disclosure statement as "[c]reditors and parties in interest." (Bankr. Doc. 372 ¶¶ 16, 18; Bankr. Doc. 379; Bankr. Doc. 386 ¶ 2; Bankr. Doc. 430 at 1).

Third, the bankruptcy court is not an Article III court. It acts on referral from this court, and its power to enter final judgment is limited. *See Stern v. Marshall*, 564 U.S. 462 (2011). *Catlin*, *Mohawk*, and *Fleming* each involved an Article III

court ruling on its own authority. Allowing a non-Article III court to proceed to final judgment without Article III review of whether it has power at all raises a structural concern those cases did not address.

A question of power that cannot be saved for effective review at the end of the case is the question the *Catlin* rule, by its own terms, does not reach. I present this argument in good faith for the extension of existing law and preserve it for further review.

**STATEMENT OF THE ISSUES**

1. When a party challenges, the court recognizes, or a stranger identifies a concern with federal subject-matter jurisdiction, the federal court must decide that concern before reaching the merits. Did the bankruptcy court fulfill that duty when it recharacterized my jurisdictional challenge as an objection to the PEDixon and ZPD claims and then, despite record facts showing the loans were removed from any court's enforcement power, nevertheless assumed jurisdiction over those claims?

2. Section 687.071(7), Florida Statutes, provides that no extension of credit made in violation of section 687.071 "shall be an enforceable debt in the courts of this state." Does this legislative act remove the entire class of claims arising from such extensions of credit from the authority of every court within the State?

3. Bankruptcy law imports the forum state's law when determining a claim's validity. Does that limit reach the bankruptcy court's power to adjudicate a debt that no Florida court may enforce?*See*11 U.S.C. § 101(5)(A).

4. Does this court have jurisdiction over this appeal because the order finally resolved a discrete dispute over the bankruptcy court's power to adjudicate the PEDixon and ZPD claims, 28 U.S.C. § 158(a)(1); if not, should this court grant leave to appeal under 28 U.S.C. § 158(a)(3); and if not, is the order reviewable under the collateral-order doctrine, because a ruling on subject-matter jurisdiction in a bankruptcy case cannot be saved for effective review at the end of the case?

## STANDARD OF REVIEW

A district court reviews a bankruptcy court's legal conclusions de novo and its factual findings for clear error. *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 698 (11th Cir. 2005). Issues 1 through 3 each present an issue of law: whether a federal court must decide a challenge to its subject-matter jurisdiction before it reaches the merits, and whether the bankruptcy court did so here (Issue 1); what section 687.071(7), Florida Statutes, means (Issue 2); and whether that limit reaches the bankruptcy court's power to adjudicate a debt that no Florida court may enforce, given that bankruptcy law looks to the forum state's law to determine a claim's validity (Issue 3). The bankruptcy court made no

finding of fact on any of them. (Bankr. Doc. 344 at 2). Because each is an issue of law, this court's review of each is de novo.

Issue 4 does not ask this court to review a ruling of the bankruptcy court. It asks whether this court has jurisdiction to hear the appeal. Whether to grant leave to appeal under 28 U.S.C. § 158(a)(3) rests in this court's discretion, guided by the factors of 28 U.S.C. § 1292(b). *McFarlin*, 381 F.3d at 1257–59. Whether the order is final under § 158(a)(1), or falls within the collateral-order doctrine, is a question of law that this court decides for itself, without deference to the bankruptcy court. *See Steel Co.*, 523 U.S. at 95.

**STATEMENT OF THE CASE**

Homemakers Real Estate, LLC is the debtor in a Chapter 11 case pending in the United States Bankruptcy Court for the Middle District of Florida. *In re Homemakers Real Estate, LLC*, No. 6:25-bk-05570-GER. An involuntary petition was filed against the debtor on September 2, 2025, and the bankruptcy court entered an order for relief on May 21, 2026. (Bankr. Doc. 229 at 1). The United States Trustee appointed Lara Roeske Fernandez as Chapter 11 Trustee on June 11, 2026. (Bankr. Doc. 249 at 1–2).

I am a creditor of the estate (Claim No. 1-1) and the proponent of a competing plan of reorganization. (Bankr. Docs. 303, 432). PEDixon and ZPD assert claims against the estate totaling $6,160,031.25 (Claim Nos. 67-1, 68-1), and

they have opposed the disclosure statement for my plan as "[c]reditors and parties in interest." (Bankr. Doc. 430 at 1). Whether those claims exist determines how much the estate owes, who may vote on my plan, and what every other creditor recovers.

PEDixon, LLC and ZPD, LLC filed proofs of claim for $4,779,864.58 and $1,380,166.67. (Claim Nos. 67-1, 68-1; Bankr. Doc. 419 ¶ 5; Bankr. Doc. 420 ¶ 5). Each claim rests on the debtor's guaranty of a consolidated loan agreement dated September 14, 2023, under which PEDixon and ZPD lent to Tiered Capital, Inc. (Bankr. Doc. 419 ¶ 6; Bankr. Doc. 420 ¶ 6; Bankr. Doc. 372 ¶ 6). The agreement recites outstanding principal of $10,325,000 and an additional $750,000 advanced at signing. (Bankr. Doc. 372 ¶ 6). The expert report in the record computes the effective annual rate on that aggregate $11,075,000 loan at 69.13 percent over an eighteen-month term. (Bankr. Doc. 339 at 6 ¶ 9).

I moved the bankruptcy court to determine its subject-matter jurisdiction over the PEDixon and ZPD claims and to exclude those parties from participating as creditors until it did. (Docs. 242, 306, 330). The motions rested on section 687.071(7), Florida Statutes, and on the record then before the court: the instruments, the proofs of claim, and the expert report of Gary A. Moll (Bankr. Doc. 339).

On August 21, 2026, the bankruptcy court denied the motions. (Doc. 344). The order recognized that "this Court must determine whether it has subject matter jurisdiction." (*Id.* at 2). It then held that the motions "are in substance objections to the Claims," that the allowance or disallowance of claims is a core proceeding, and that the court therefore had jurisdiction. (*Id.*). It agreed that an extension of credit in violation of Florida law "might support disallowance of the Claims," but held that this "goes to the merits of the Claims and not to the Court's subject-matter jurisdiction." (*Id.*). It did not decide whether the PEDixon and ZPD extensions of credit are enforceable.

At the August 19, 2026 hearing on the motions, the bankruptcy court asked: "[S]ince the Florida legislature said no court can enforce a usurious debt; so, therefore, no court would have jurisdiction over it. So there can be no determination. Who gets to determine this, then?" (Bankr. Doc. 351 at 29). I answered that the court "can examine its own jurisdiction from anything," that the Rule 56 requirements "do not apply in their entirety," and that the court could "bifurcate the issue and conduct an evidentiary procedure" on usury. (*Id.*). The court responded that the motions were "in substance . . . an objection to claim and dispute over the allowance of the claims," and that it had jurisdiction over a claim objection as a core proceeding. (*Id.* at 30). It then limited claim objections to the Trustee: "So unless I enter a further order of the Court that allows anybody else to

file claim objections, I'm going to limit it to the Trustee for now." (*Id.* at 31). Counsel for creditor Horton Johnson, who had filed the Moll report the day before, told the court that the report "does find criminal usury on the aggregated loan of PEDIXON and ZPD" and asked: "We should have a hearing on usury." (*Id.* at 34–35). The court left the question to the Trustee and ruled: "I find I do have jurisdiction." (*Id.* at 35).

I filed a notice of appeal on August 26, 2026 (Bankr. Doc. 352), an amended motion for leave to appeal on August 31, 2026 (Doc. 1-3), and a statement of issues (Bankr. Doc. 365). On September 2, 2026, the bankruptcy court approved a compromise under which PEDixon and ZPD agreed to pay the estate $350,000 on account of rents they received after the petition date and to waive any claim under section 502(h), conditioned on mutual releases between them and the estate's secured creditors and condominium association. (Bankr. Doc. 372 ¶¶ 8, 16, 18; Bankr. Doc. 379). The Trustee reserved her right to object to Claims 67 and 68. (Bankr. Doc. 372 at 3 n.3). On September 11, 2026, the court directed the Trustee, PEDixon, and ZPD to a judicial settlement conference "for possible resolution of all issues between the Parties." (Bankr. Doc. 386 ¶ 2). On October 2, 2026, the Trustee objected to both claims, stating among other grounds that each "may be unenforceable" under state law. (Bankr. Doc. 419 ¶ 19; Bankr. Doc. 420 ¶ 18). Those objections remain pending.

## SUMMARY OF THE ARGUMENT

The Supreme Court instructs that when a party challenges, the court itself recognizes, or a stranger identifies a concern with federal subject-matter jurisdiction, the federal court must decide that jurisdictional concern before reaching the merits of the cause. The federal court's independent duty to examine subject-matter jurisdiction relieves the court of the constraints imposed by the rules governing summary judgment or judgment on the pleadings. The court may examine any evidence available to assist it in determining whether subject-matter jurisdiction exists. Moreover, if needed, the court should conduct evidentiary proceedings to adduce the facts necessary for the jurisdictional determination. This duty exists even when the jurisdictional facts are intertwined with the facts necessary for a merits ruling.

When presented with the subject-matter jurisdiction challenge, the bankruptcy court recharacterized it as a claims objection and assumed hypothetical jurisdiction over the claims presented by the creditors. The record before the bankruptcy court contained unrefuted evidence that the creditors' claims rested upon loans that violated Florida Statute § 687.071. The Florida Legislature had already dictated that any loan violating § 687.071 is part of an entire class of claims removed from the authority of any court within the state, including the bankruptcy court's power to enforce.

Quite simply, as the Supreme Court has long held, a federal court must first determine whether the cause is outside its jurisdiction and, if so, must cease all activity other than dismissing the cause of action. The bankruptcy court lacked authority to take any action but to determine whether PEDixon's and ZPD's claims violated Florida Statute § 687.071.

## ARGUMENT

### I. When a party challenges, the court recognizes, or a stranger identifies a concern with subject-matter jurisdiction, a federal court must decide that concern before it reaches the merits.

The Supreme Court speaks unambiguously. Federal courts are courts of limited jurisdiction. "They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Only Congress and the Constitution define the authority of a federal court. The law presumes "that a cause lies outside this limited jurisdiction," and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted).

Without a grant from Congress or the Constitution, a federal court must not act, because it is lawfully powerless to act. The Supreme Court states the rule in words that have not changed since 1869: "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the

fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)).

That rule fixes the order of decision. When litigants bring a matter to a federal court, the court must first decide whether the matter lies within its subject-matter jurisdiction. "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Id.* at 94–95 (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)). The Constitution imposes the duty, and a court may not shirk it for an easier path. Here, PEDixon and ZPD filed claims, bringing their matter before the court. A court that assumes its power and moves on produces "nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion." *Id.* at 101. "For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Id.* at 101–02.

The Supreme Court has since described what that threshold question is about. Jurisdiction to resolve cases on the merits "requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction)." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). A federal court "generally may not rule on the merits of a case without first

determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). Those decisions allow a court to choose among threshold grounds that end a case without reaching the merits, because "there is no unyielding jurisdictional hierarchy." *Ruhrgas*, 526 U.S. at 578. None of them allows a court to assume its power over a category of claim and move on. My motions put that question: whether any court may adjudicate, as an enforceable debt, a claim arising from an extension of credit made in violation of section 687.071. (Docs. 242, 306, 330).

The duty does not depend on who raises the concern. The question of jurisdiction may be "raised, either by a party or by the court on its own motion." *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947). It "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). And because "no action of the parties can confer subject-matter jurisdiction upon a federal court," the consent of the parties "is irrelevant," "principles of estoppel do not apply," and a party "does not waive the requirement by failing to challenge jurisdiction early in the proceedings." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (citations omitted).

It follows that the source of the concern does not matter when anyone puts it before the court: a party, the court itself, or a stranger to the dispute. A court that must raise the question on its own must also answer it. The obligation runs to the court's own power, not to the person who identified the doubt. The Eleventh Circuit enforces the same duty on appeal: "We have an independent obligation to ensure that we have jurisdiction." *Baker v. City of Atlanta*, 164 F.4th 850, 861 (11th Cir. 2026).

If at any time the court finds that it lacks jurisdiction, the court must cease every action except one. It announces the lack of jurisdiction, and it dismisses the cause. *Steel Co.*, 523 U.S. at 94.

## II. The duty to examine jurisdiction frees the court from the constraints of summary judgment and judgment on the pleadings, permits it to examine any evidence, and requires evidentiary proceedings when needed, even where the jurisdictional facts are intertwined with the merits.

The duty to police the court's own authority and power carries the means to perform it. "The trial court is not bound by the pleadings of the parties, but may, of its own motion, if led to believe that its jurisdiction is not properly invoked, 'inquire into the facts as they really exist.'" *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 184 (1936) (quoting *Wetmore v. Rymer*, 169 U.S. 115, 120 (1898)).

The Supreme Court has drawn the line between a merits motion and a jurisdictional inquiry. On a motion to dismiss for failure to state a cause of action, "the facts set forth in the complaint are assumed to be true and affidavits and other evidence . . . may not be considered." *Land*, 330 U.S. at 735 n.4. "But when a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, . . . the court may inquire, by affidavits or otherwise, into the facts as they exist." *Id.* (citations omitted). "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." *Id.* (quoting *Gibbs v. Buck*, 307 U.S. 66, 71–72 (1939)).

The Eleventh Circuit applies the same rule to a factual attack, which challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quotation omitted). On a factual attack, "the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981)). "[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Williamson*, 645 F.2d at 412–13).

The burden of producing those facts rests on the party that invokes the court's power. "[T]he burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377. "If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof," and the court "may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *McNutt*, 298 U.S. at 189. PEDixon and ZPD invoked the bankruptcy court's power by filing proofs of claim. (Claim Nos. 67-1, 68-1). The burden was theirs.

When the written record does not settle the question, the court must take evidence. The manner of trial is the court's to choose; the court may decide on affidavits, take testimony, or try the issue to a jury. *McNutt*, 298 U.S. at 184–85 (discussing *Wetmore*, 169 U.S. at 120–21). But a choice of procedure is not a choice to decide nothing. In *McNutt* the Supreme Court reversed because the trial court "made no adequate finding upon that issue of fact, and the record contains no evidence to support the allegation of the bill." 298 U.S. at 190.

The duty does not lapse when the jurisdictional facts are intertwined with the merits. In *Land*, the question of jurisdiction was "dependent on decision of the merits." 330 U.S. at 735. The Supreme Court did not excuse the trial court from deciding. It held that "the District Court has jurisdiction to determine its jurisdiction by proceeding to a decision on the merits." *Id.* at 739. Intertwining

changes the procedure by which the court decides. It does not change whether the court decides.

### III. The bankruptcy court recharacterized my jurisdictional challenge as a claims objection and assumed hypothetical jurisdiction over the claims.

The bankruptcy court began correctly. Its order quoted the Supreme Court: "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." (Doc. 344 at 2 & n.2). It recited the court's "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." (Doc. 344 at 2 & n.3). And it drew the right conclusion: "Therefore, this Court must determine whether it has subject matter jurisdiction." (Doc. 344 at 2).

The next sentence abandoned the inquiry the order had just announced. "While the Motions are styled as jurisdictional and disqualification challenges, they are in substance objections to the Claims." (Doc. 344 at 2). With that sentence the order stopped examining its power and began describing its docket. It called the dispute a claims contest. It placed claims contests among the core proceedings of 28 U.S.C. § 157(b)(2)(B). And it concluded: "Because the Court finds that it has jurisdiction to determine the allowance or disallowance of the Claims as a 'core proceeding,' it is ORDERED that the Motions . . . are DENIED." (Doc. 344 at 2).

A core-proceeding designation cannot carry that weight. Section 157 tells a bankruptcy judge which matters the judge may hear and finally determine. It does not create the power it allocates. The Supreme Court said so in a bankruptcy case: "Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction." *Stern v. Marshall*, 564 U.S. 462, 480 (2011) (citation omitted). The order therefore answered a question about power with a label about authority.

The recharacterization also assumed the answer it was asked to supply. An objection to a claim presupposes a claim the court may allow or disallow. My motions challenged exactly that presupposition. They asserted that Florida law forbids every court of the State to treat these extensions of credit as enforceable debts, and that a debt no court may enforce is no claim at all. (Docs. 242, 306, 330). By relabeling the challenge an objection, the order took as settled the one proposition the challenge contested. An umpire asked whether the game counts does not answer by calling balls and strikes.

That is the practice the Supreme Court calls "hypothetical jurisdiction," and the Court has rejected it. Assuming jurisdiction for the purpose of deciding the merits "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Steel Co.*, 523 U.S. at 94.

No decision of the Court "even approaches approval of a doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt." *Id.* at 101. The order assumed the court's power over the PEDixon and ZPD claims and kept those claims before the court for adjudication on the merits.

The order then conceded the substance and set it aside. "While the Court agrees that an extension of credit in violation of Florida law might support disallowance of the Claims because 'such claim is unenforceable against the debtor . . . under any agreement or applicable law,' that goes to the merits of the Claims and not to the Court's subject-matter jurisdiction to hear and determine whether to allow or disallow the Claims." (Doc. 344 at 2). The order did not decide whether Florida law leaves PEDixon and ZPD any enforceable debt. It decided only that the question could wait, and it denied the motions that asked the court to exclude PEDixon and ZPD from participating until the question was answered. (Doc. 344 at 1–2).

The hearing transcript shows the same sequence. The court asked the right question: "Who gets to determine this, then?" (Bankr. Doc. 351 at 29). I gave the answer the Supreme Court gives: the court may examine its jurisdiction from anything in the record, unconstrained by Rule 56, or may bifurcate the issue and take evidence. (*Id.*). The court instead read the motions as "in substance . . . an

objection to claim," held that it had jurisdiction over a claim objection, and then limited claim objections to the Trustee. (*Id.* at 30–31). When counsel for Mr. Johnson asked for "a hearing on usury," the court left the matter to the Trustee and ruled that it had jurisdiction. (*Id.* at 34–35). The jurisdictional challenge was renamed an objection.

The Trustee's later objections confirm the point; they do not cure it. Six weeks after the order, the Trustee objected to both claims and asserted that each "may be unenforceable" under state law, a question she described as requiring "a fact intensive analysis." (Bankr. Doc. 419 ¶ 19; Bankr. Doc. 420 ¶ 18). The bankruptcy court had that question before it in August, on a record that already held the instruments, the proofs of claim, and the expert report, and it declined to decide it. In the meantime PEDixon and ZPD settled, mediated, and were heard as creditors. (Bankr. Docs. 372, 379, 386, 430).

## IV. The record before the bankruptcy court held unrefuted evidence that the PEDixon and ZPD claims rest on extensions of credit made in violation of section 687.071.

Section 687.071 makes it a crime for a person making an extension of credit to "willfully and knowingly charge, take, or receive interest thereon at a rate exceeding 25 percent per annum but not in excess of 45 percent per annum," a misdemeanor of the second degree. Fla. Stat. § 687.071(2). Above 45 percent per annum the offense is a felony of the third degree. *Id.* § 687.071(3).

My motions did not rest on the pleadings alone. The record before the bankruptcy court held the instruments, the PEDixon and ZPD proofs of claim, and the expert report of Gary A. Moll, a certified public accountant. (Claim Nos. 67-1, 68-1; Bankr. Docs. 339, 341). Mr. Moll computed the effective annual rate on the aggregate $11,075,000 loan, by the method section 687.03(3) prescribes, at 69.13 percent. (Bankr. Doc. 339 at 6 ¶ 9). On the $750,000 loan of September 2023 standing alone, he computed 47.53 percent, "on the lender's own note and the lender's own loan agreement, without reference to any valuation." (*Id.* at 7 ¶ 15). Both figures exceed the 45 percent line of section 687.071(3). And if the one contested input, the value of the Homemakers membership units, is disputed, the result does not change: any value above $1,653,458 yields a rate above 25 percent, and the lowest value in the record exceeds that figure more than four times over. (*Id.* at 6 ¶ 10).

The figures came from the lenders' side of the transaction. The two documents that drive the computations are a closing reconciliation prepared by the lenders' closing attorney and PEDixon's own loan schedule. (*Id.* at 5 ¶ 6). PEDixon and ZPD offered no contrary evidence: no competing computation, no affidavit, no testimony. Their counsel did not address the rate at the hearing. (*See* Bankr. Doc. 351). The evidence was unrefuted, and the burden of proving the court's power over their claims was theirs. *McNutt*, 298 U.S. at 189.

## V. Section 687.071(7) does not merely render these debts unenforceable; it removes an entire class of claims from the authority of every court of the State.

The Florida Legislature commanded its courts not to enforce any extension of credit made in violation of section 687.071. The statute reads:

> No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state.

Fla. Stat. § 687.071(7). The Florida Supreme Court reads the penalty to reach "the entire principal amount." *Jersey Palm-Gross, Inc. v. Paper*, 658 So. 2d 531, 534 (Fla. 1995). A lender who violates the statute "forfeits the right to collect the debt." *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. 1st DCA 1988). A bankruptcy court in this State held that such a lender "cannot seek to recover the unpaid principal on a criminally usurious loan, whether by proof of claim, set-off, counterclaim or otherwise." *In re Omni Capital Grp., Ltd.*, 157 B.R. 712, 720 (Bankr. S.D. Fla. 1993). *See also Beausejour Corp., N.V. v. Offshore Dev. Co.*, 802 F.2d 1319, 1320, 1322–23 (11th Cir. 1986) (affirming the judgment that a criminally usurious loan papered as a sale was unenforceable).

The addressee decides the character of the command. The Legislature did not write that a borrower may raise usury as a defense. It did not write that a lender forfeits a remedy. It wrote that no such extension of credit "shall be an enforceable debt in the courts of this state." The command operates on the courts. By speaking

its imperative to the courts rather than to a party, the Legislature spoke in jurisdictional terms. The Supreme Court draws the same line: jurisdictional statutes "speak to the power of the court rather than to the rights or obligations of the parties." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (quoting *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 100 (1992) (Thomas, J., concurring)).

The Legislature knows how to write a personal remedy for a borrower, and it wrote one for civil usury. There, "the borrower's remedy is to seek forfeiture of twice the amount of interest actually paid by the borrower." *Omni*, 157 B.R. at 717 (citing Fla. Stat. § 687.04). The criminal statute gives the borrower nothing to seek. It takes the debt out of the courts. Section 687.071(7) therefore does not create an affirmative or personal defense for the borrower. It removes an entire class of claims, not merely a remedy, from the judiciary of the State.

The command also reaches a class, not a case. It does not say that a particular lender may be denied a particular recovery. It says that "[n]o extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state." Fla. Stat. § 687.071(7). The statute defines the class by the conduct that created the debt, and it withdraws the whole class from every court of the State. That is the shape of a limit on authority over a "category of claim." *Ruhrgas*, 526 U.S. at 577; *Sinochem*, 549 U.S. at 430–31.

I acknowledge the contrary treatment. Florida courts have described usury as a defense that the borrower raises and must prove. *See Valliappan v. Cruz*, 917 So. 2d 257, 259–60 (Fla. 4th DCA 2005) ("Having raised usury as an affirmative defense, Valliappan bore the burden of proof on that issue."). *Valliappan* did not consider whether subsection (7) limits the power of a court. It addressed who must prove the facts of a violation. That allocation does not answer what a court may do once a violation is shown, and it has no bearing where, as here, the party challenging the debt raised the statute at the threshold on a record that holds the instruments. (Docs. 242, 306, 330).

*Omni* did not describe that rule as jurisdictional, and I do not cite it for that. I cite it for the reach of the command. The command bars recovery "whether by proof of claim, set-off, counterclaim or otherwise." 157 B.R. at 720. A proof of claim is the very instrument PEDixon and ZPD used here. (Doc. 344 at 1).

## VI. That limit reaches the bankruptcy court's power to adjudicate, because Congress defines a claim by the law that creates it.

I began with the rule that only Congress and the Constitution define the power of a federal court. I hold to it. I do not ask this court to let a state legislature subtract from a federal grant. The Florida statute does not operate in a federal court by its own force. It operates because Congress adopted it.

Congress defines a "claim" as a "right to payment." 11 U.S.C. § 101(5)(A). Congress leaves the existence of that right to state law. "Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). The Eleventh Circuit applies that rule to claims: "State law governs the validity of a claim in bankruptcy," and a claim is not allowed "if the same claim would not be enforceable . . . outside of bankruptcy." *Bay United Holdings, LLC v. INXS 7, LLC (In re Aegis Asset Mgmt., LLC)*, No. 25-10331, 2026 WL 2131679, at *4 (11th Cir. July 24, 2026) (quotation omitted). And Congress directs the court to allow a claim except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

The chain closes. Florida withholds from every court of the State the power to treat these extensions of credit as enforceable debts. Congress looks to that same Florida law to decide whether any right to payment exists. Where Florida law forbids every court to enforce the debt, Congress's definition finds no right to payment, and without a right to payment there is no claim for a bankruptcy court to adjudicate. The Florida Legislature supplied the rule. Congress gave it force in a federal court. The combination of the two forbids the bankruptcy court to enforce what Florida forbids its own courts to enforce.

The bankruptcy court relied on the same authorities. It cited *Butner* and section 502(b)(1), and it agreed that these extensions of credit "might support disallowance." (Doc. 344 at 2 & nn.6–7). The disagreement is not about what the law says. It is about when the court must say it.

## VII. Once a federal court discovers that a cause lies outside its jurisdiction, it must cease all activity other than dismissal.

Quite simply, the Supreme Court has held that a federal court must first determine whether a cause lies outside its jurisdiction, and that once it finds the cause outside its jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)). Congress put the same command in the statute that *McNutt* enforced: when a suit does not "really and substantially involve a dispute or controversy properly within the jurisdiction" of the court, the court "shall proceed no further therein, but shall dismiss the suit." *McNutt*, 298 U.S. at 182 (quoting Act of Mar. 3, 1875, ch. 137, § 5, 18 Stat. 470, 472).

Applied here, the rule leaves the bankruptcy court one task. If the PEDixon and ZPD claims rest on extensions of credit made in violation of section 687.071, the court has no power to adjudicate them, and the only function remaining to it is to say so and dismiss them. It may not allow them, and it may not let their holders

vote, share in distributions, or otherwise act as creditors on the strength of them. Every step taken on those claims before the question is answered is a step the court may have had no power to take.

The bankruptcy court has not answered the question. This court should reverse and remand with instructions to answer it first: on the existing record, after an evidentiary hearing if any material fact is genuinely disputed, and, if the claims fall within section 687.071(7), by dismissing them.

## CONCLUSION

The bankruptcy court recognized its duty to determine its own power, then recharacterized my challenge as a claims objection and assumed the jurisdiction the challenge contested. The record held unrefuted evidence that the PEDixon and ZPD claims rest on extensions of credit that Florida forbids every court of the State to enforce. The order is final and appealable under 28 U.S.C. § 158(a)(1); alternatively, this court should grant leave under § 158(a)(3) or review the order under the collateral-order doctrine. On the merits, the law requires this court to reverse the order entered August 21, 2026 (Bankr. Doc. 344), and to remand with instructions that the bankruptcy court:

(1) determine, as a threshold question of its subject-matter jurisdiction, on the existing record and after an evidentiary hearing if any material fact

is genuinely disputed, whether the PEDixon and ZPD extensions of credit were made in violation of section 687.071, Florida Statutes;

(2) if they were, dismiss Claim Nos. 67-1 and 68-1 (or, if section 687.071(7) is treated as a rule of decision, disallow them under 11 U.S.C. § 502(b)(1)); and

(3) make that determination before PEDixon and ZPD vote, receive distributions, or otherwise participate further in the case as creditors of the estate.

I also ask this court to grant such other relief as it deems appropriate or fair.

Respectfully submitted this 28 day of October, 2026.

Frank L. Amodeo
*Pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32809@gmail.com

## CERTIFICATION UNDER PENALTY OF PERJURY THAT ARTIFICIAL INTELLIGENCE WAS USED IN THE PREPARATION OF THIS FILING

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: Over the past fifteen months I have used ChatGPT, made by OpenAI, and Claude, made by Anthropic, and have tailored them to assist me in my work. In preparing filings in this appeal, including the brief, I use them within the "madman, architect, carpenter, judge" method of writing. (1) Madman: I have the artificial intelligence scout the orthodox positions on the legal issues and report them back to me. I assess that material together with other sources and build my own nonlinear outline of the legal issues the facts present. (2) Architect: I organize the ideas into the structure of the filing myself. Occasionally I ask the artificial intelligence for a proposed outline, but I usually find its outlines too orthodox for my style and do not use them. (3) Carpenter: I have the artificial intelligence search the record and other factual sources and return pinpoint references, which I check against my own knowledge of the facts. I also have it double-check authorities and whether they remain good law, but I do not rely on those checks; I do that work myself. (4) Judge: I have the artificial intelligence play opposing counsel, find flaws in my arguments, and point out gaps in reasoning or explanation, as a quality-control check. For this filing, Claude prepared the draft from facts I supplied and formatted the document, and I

reviewed, revised, and adopted every sentence. I do not rely on the machines. No filing is made, and no case or other decisional authority of any kind is cited, unless I have personally read it and made my own judgment about it. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

________________________________
Frank L. Amodeo

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B) because it contains 7,424 words, excluding the parts exempted by Rule 8015(g). It complies with the typeface and type-style requirements of Rule 8015(a)(5) and (6) because it is prepared in a proportionally spaced serif typeface, Times New Roman, in 14-point type.

________________________________
Frank L. Amodeo

## CERTIFICATE OF SERVICE

I certify that on the ____ day of _______________, 2026, I filed this brief with the Clerk of the United States District Court for the Middle District of Florida. On the same day I served a copy by U.S. Mail on Rhys P. Leonard, counsel for Appellee Lara Roeske Fernandez, Chapter 11 Trustee, 101 East Kennedy Boulevard, Suite 2700, Tampa, Florida 33602-5150, and by U.S. Mail and email on Jeffrey S. Ainsworth, Branson Ainsworth PLLC, 1501 E. Concord Street, Orlando, Florida 32803, Jeff@bransonlaw.com, counsel for PEDixon, LLC and ZPD, LLC.

Frank L. Amodeo